# UNITED STATES DISTRICT COURT
для the
Southern District of Texas

United States District Court
Southern District of Texas
FILED

MAY 2 0 2015

David J. Bradley, Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

███████████
Brownsville, Texas

Case No. B-15-474-MJ

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

███████████ Brownsville, Texas

located in the ____Southern____ District of ____Texas____, there is now concealed *(identify the person or describe the property to be seized)*:
A tan stucco and stone residence located at ███████████ Brownsville, Texas.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1956 and 1957 | Conspiracy and laundering of monetary instruments |
| 21 USC 846 | Conspiracy to possess with intent to distribute more than five kilograms of cocaine |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's Signature*

James Wimberley, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 20, 2015

City and state: Brownsville, Texas

*Judge's signature*

Ignacio Torteya III, U.S. Magistrate
*Printed name and title*

# ATTACHMENT "A"

<u>PROPERTY TO BE SEIZED</u>

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, a Schedule II Controlled Substance;

2. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders and bank drafts, and cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

4. Electronic equipment, such as computers, telex machines, facsimile machines currency counting machines, telephones, cellular telephones, answering machines, pagers, radio scanners, radio transceivers, and related manuals used to generate, transfer, count, record, and/or store the information described in items 1, 2, 3, and 5 of this exhibit. Additionally, computer software and media, tapes and disc, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment, to include telephone numbers, push to talk identification numbers, stored or recorded in cellular telephones, and SIM cards;

5. United States currency, foreign currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotic trafficking.

6. Photographs, including still photos, digital media, negatives, video tapes, films, undeveloped film and the contents therein, slides in particular photographs of co-conspirators, and/or assets, including those described in paragraph 1 and 3, and indicia of unexplained wealth.

7. Address and/or telephone books, rolodex indices and any papers reflecting names, addresses, telephone numbers, pagers numbers, fax numbers, and/or telex numbers of co-conspirators, sources of supply of the illegal substances or proceeds thereof, customers, financial institutions, other individuals or businesses with whom a financial relationship exists, and other types of contraband that are indicative of and/or derived from illegal narcotics trafficking; and

8. Indicia of occupancy, residency, rental, and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, and keys.

AFFIDAVIT
ATTACHMENT "B"

Affidavit in support of a Search Warrant for the properties located at the residence of Rogelio NIETO-GONZALEZ and Ninfa C. BEATTIE, which is further described as a tan and brown stone two story residence, with a black shingle roof, to include detached buildings, sheds, warehouses and vehicles that's on the property located at ███████████ Brownsville, Texas. Affiant, James W. Wimberley, being duly sworn, deposes and says:

I am employed as a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA) currently assigned to the Brownsville Resident Office, Brownsville, Texas. I have been so employed for six years. In connection with my official duties, I investigate criminal and civil violations of the Controlled Substance Act (CSA). I have received specialized training in the enforcement of laws concerning controlled substances as found in Title 21 and money laundering found in 18 USC 1956 and 1957. In connection with my duties as a Federal Law Enforcement Officer, I have testified in judicial proceedings and prosecutions for violations of laws concerning controlled substances.

1. I submit this affidavit in support of my belief that there is probable cause to believe that the property and items enumerated in Attachment "A" are to be found on the premises of the residence of Rogelio NIETO-GONZALEZ and Ninfa C. BEATTIE at ███████████ Brownsville, Texas.

2. Based upon training, experience, and participation in drug offense investigations and investigations into the financial implications which result from violations of the Controlled Substance Act, I know:

   a. That drug traffickers very often place assets in names of others than their own to avoid detection of these assets by Government Agencies;

   b. That even though these assets are in other persons' names, the drug traffickers continue to use these assets and exercise dominion and control over them;

   c. That large-scale drug traffickers maintain on hand large amounts of U.S. Currency in order to maintain and finance their on-going drug business;

   d. That drug traffickers maintain for long periods of time books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers and related computer hardware relating to the importation, transportation, ordering, sale, purchase and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the drug traffickers have ready access to them as in their houses and places of business and to conceal them from law enforcement officials;

   e. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, to include jewelry, and records of drug transactions in secure locations for ready access and to conceal them from law enforcement authorities;

   f. That persons involved in drug trafficking conceal in secure locations, with ease of access, caches of drugs, large amounts of currency, financial instructions, and proceeds of drug

transactions; and evidence of financial transactions relating to obtaining, transferring, secreting or spending of large sums of money made from engaging in drug trafficking activities;

g. That when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits. That to accomplish these goals, drug traffickers utilize, including but not limited to foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, real estate, business fronts realized from narcotic distribution; currency and various expensive assets (e.g. gold, silver, furs and expensive gemstones) purchased from narcotic trafficking;

h. That drug traffickers commonly maintain addresses or telephone numbers in books, papers or computers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

i. That drug traffickers take or cause to be taken photographs of them, their wealth, their associates, and their product. That these traffickers usually maintain these photographs in their possession or in their homes;

j. That the Courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular trafficking in controlled substances;

k. That based on my training and experiences, that drug traffickers commonly have in their possession, at their residences and/or their businesses, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug traffickers property. Such property may include, but is not limited to, controlled substances, jewelry, drug paraphernalia, books, records, U.S. Currency, etc.

3. Upon information and belief there is presently concealed within the premises listed in the heading of this affidavit those items which are set forth in Attachment A, attached, which items constitute evidence of violations of Title 21, United States Code, Sections 841 (a)(1), 846; Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h); and Title 31, United States Code, Sections 5324(a)(3) and (d)(2). The source of your affiant's information and the grounds for his belief are as follows:

4. The following paragraphs are furnished to establish probable cause in support of this warrant:

(a.) Your affiant has reason to believe that Rogelio NIETO-GONZALEZ is involved in the distribution of cocaine in the United States of America. Your affiant bases his opinion on investigative leads developed by your affiant from an ongoing investigation into the Rogelio NIETO-GONZALEZ and Abel BRIONES-RUIZ Drug Trafficking Organization (DTO). NIETO-GONZALEZ is a source of cocaine for the DTO, which is a US-based narcotics trafficking organization operating in Brownsville, Texas, as well as other areas throughout the United States.

(b.) The Honorable Nelva Gonzales Ramos, United States District Judge for the Southern District of Texas, signed orders authorizing the interception of wire communications and GPS tracking of TARGET TELEPHONE #1, #3, and #4, utilized by Roberto RUIZ and Mario DE LA FUENTE. The Drug Enforcement Administration (DEA) intercepted TARGET

TELEPHONE #1 from April 02, 2012 to May 11, 2012. The DEA intercepted TARGET TELEPHONE #3 from May 14, 2012 to June 13, 2012. TARGET TELEPHONEs #1 and #3 were utilized by Roberto RUIZ. The DEA tracked and intercepted TARGET TELEPHONE #4 from June 12, 2012 to July 30, 2012 when the phone stopped being utilized by Mario DE LA FUENTE. During the interception of these TARGET TELEPHONES, numerous conversations involving drug trafficking were intercepted and recorded. Additionally, 14 kilograms of cocaine were seized by law enforcement during the interception of TARGET TELEPHONE #1. In August 2013, RUIZ, DE LA FUENTE, and others were indicted for their roles in the DTO. All seven (7) defendants have pled guilty and are cooperating at various levels. Six (6) defendants identified BRIONES-RUIZ as the Gulf Cartel member who had supplied the DTO with cocaine and to whom the profits from the cocaine sales were returned. DE LA FUENTE identified Rogelio NIETO-GONZALEZ as being a brother-in-law and partner of BRIONES-RUIZ. DE LA FUENTE also identified numerous bank accounts into which he and RUIZ deposited narcotics proceeds at the direction of BRIONES-RUIZ and NIETO-GONZALEZ. Some of these accounts belong to the wives of BRIONES-RUIZ and NIETO-GONZALEZ. In the accounts belonging to BRIONES-RUIZ and his wife, MYRIAM SUSANA BEATTIE DE BRIONES and in the account belonging to NIETO-GONZALEZ's wife, Ninfa C. BEATTIE, there is evidence of the structuring of deposits and withdrawals to evade bank reporting requirements.

(c.) On April 22, 2012, at approximately 2:00 P.M., TARGET TELEPHONE #1 called Peter MORALES, with an approximate duration of 00:01:00. During this conversation, RUIZ and MORALES are discussing a shipment of fourteen (14) kilograms of cocaine for Ricardo OLIVAS to transport for the RDTO. At approximately 2:19 P.M., TARGET TELEPHONE #1 called Mario DE LA FUENTE, with an approximate duration of 00:02:01. During this conversation, RUIZ and DE LA FUENTE are discussing that RUIZ, will have to dress them with two covers. DE LA FUENTE explains to RUIZ that he needs to use vacuumed sealed bags for covers. RUIZ explained to DE LA FUENTE "I'll call you when I am ready so you can pass by Masacuata, OK, its better there, it's calmer there". RUIZ explains to DE LA FUENTE that he will call DE LA FUENTE and utilized Leonel DIAZ's a.k.a. "Masacuata" residence to prepare the kilograms of cocaine for transportation. At approximately 3:50 p.m., agents established surveillance on OLIVAS's vehicle at 2262 El Litro Street Brownsville, Texas. Due to the nature of the areas where OLIVAS was traveling and agents' fears of being discovered, agents were unable to maintain continuous surveillance on OLIVAS's vehicle; however, the agents' observations corroborated the instructions RUIZ was providing to OLIVAS through intercepted conversations on TARGET TELEPHONE #1. Agents watched OLIVAS's vehicle travel into Willacy County, Texas, where agents requested assistance from the Willacy County Sheriff's Department. A traffic stop was conducted on OLIVAS's vehicle near Raymondville, Texas and OLIVAS granted verbal consent for Sheriff Deputies to search his vehicle. Fourteen (14) kilograms of cocaine and a Glock 9MM pistol were discovered in the vehicle by Willacy County Sheriff's Deputies. OLIVAS was arrested. At approximately 8:52 P.M., TARGET TELEPHONE #1 called MORALES. During this conversation, MORALES told RUIZ that OLIVAS just sent MORALES a text saying "I'm BUSTED". MORALES tells RUIZ that OLIVAS informed MORALES via text message that OLIVAS was stopped by law enforcement. At approximately 8:55 P.M., TARGET TELEPHONE #1 received a call MORALES. During this conversation MORALES and RUIZ discussed the use of text messages between MORALES and OLIVAS. MORALES told RUIZ that he hopes OLIVAS deleted all the text messages.

RUIZ told MORALES that OLIVAS has a lot of "jale" in his phone. RUIZ then explains to MORALES that OLIVAS has a lot of drug trafficking communications on his phone.

(d.) On August 28, 2013, Roberto RUIZ and Mario DE LA FUENTE were indicted in the Southern District of Texas for violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A) and violation of Title 18 United States Code, Section 1956(a)(1)(B)(i) and (h). Both pleaded guilty to those charges.

(e.) Mario DE LA FUENTE debriefed with DEA and IRS agents regarding his involvement in the DTO. DE LA FUENTE stated that he worked for both Rogelio NIETO-GONZALEZ and BRIONES-RUIZ and beginning in 2008 until his arrest in 2013, he estimated he received 300-400 kilograms of cocaine from the DTO. DE LA FUENTE stated that NIETO-GONZALEZ and BRIONES-RUIZ were brother-in-laws, in that they married two of the BEATTIE sisters. NIETO-GONZALEZ married Ninfa C. BEATTIE, and BRIONES-RUIZ married Myriam Susana BEATTIE DE BRIONES. DE LA FUENTE gave agents six bank accounts that said he was instructed to deposit the proceeds from cocaine sales. DE LA FUENTE stated that he and others were instructed to deposit drug proceeds in amounts under $10,000 in order to avoid the bank reporting requirements.

(f.) Agents later obtained the bank statements of the bank accounts DE LA FUENTE described. The accounts included ones belonging to Ninfa C. BEATTIE, BRIONES-RUIZ, and BEATTIE DE BRIONES. DE LA FUENTE stated that BRIONES-RUIZ told him he had a home built with drug proceeds by a contractor that knew how to conceal BRIONES-RUIZ' ownership of the house.

(g.) Roberto RUIZ also debriefed with DEA and IRS agents. RUIZ stated that BRIONES-RUIZ was his cousin. RUIZ confirmed statements made by DE LA FUENTE regarding the participants in the DTO. RUIZ listened to numerous recorded phone conversations from the wire intercepts of his telephones. RUIZ identified conversations with BRIONES-RUIZ where BRIONES-RUIZ directed RUIZ to deposit $5,000 into a checking account belonging to BEATTIE DE BRIONES because RUIZ owed BRIONES-RUIZ money for a lost load of cocaine. RUIZ stated that he also delivered drug proceeds to the DTO through bulk cash smuggling into Mexico and delivery of bulk cash to Donaciano GARCIA, who would then smuggle the cash into Mexico. Amounts of cash returned to the DTO would vary between $100,000 and $200,000.

(h.) Agents also debriefed Armando ARAMBUL. ARAMBUL was convicted of Conspiracy to Possess with intent to Distribute a controlled substance and Money Laundering in 2011 in the Southern District of Texas. ARAMBUL confirmed the statements of DE LA FUENTE and RUIZ regarding the DTO, stating that ARAMBUL also distributed cocaine for the DTO from 2007 through 2010. ARAMBUL stated that BRIONES-RUIZ was supplied largely by the Gulf Cartel, but that NIETO-GONZALEZ had connections to the Sinaloa Cartel as well. ARAMBUL commonly sent drug sale proceeds back to the BRIONES-RUIZ and NIETO-GONZALEZ in loads of $300,000.

(i.) IRS agents examined the bank account identified by DE LA FUENTE that was in the name of Ninfa C. BEATTIE. From August 2009 through October 2013, cash deposits totaled

$219,046.00. Of that, $23,470.00 was deposited in states other than Texas. Agents identified a number of cash deposits that were indicative of structuring. For example, a cash deposit was made on 7/5/2011 in the amount of $5,000.00. On 7/8/2011, another cash deposit of $5,000.00 was made into BEATTIE's account. On 1/5/2012, a $4,800.00 deposit was made. Then on 1/9/2012, two separate deposits of $4,850.00 and $2,150.00 were made.

(j.) Agents have done searches in the property records of Cameron County, Texas, regarding the residence located at ███████████ Brownsville, Texas. The titled owner of the residence is Hortencia GONZALEZ. The residence actually sits on two lots, with an additional third lot comprising the backyard. There are no recorded liens or mortgages on any of the three lots that make up the residence. The previous owner of one of the two lots on 370th Street was Abel BRIONES. County records indicate there are no liens or mortgages on the property and the front two lots were purchased in 2010. The rear adjoining (backyard) lot was purchased by Ninfa C. BEATTIE also in 2010. The rear lot faces Tenaza Street; however it has been fenced in to provide backyard space for the main residence. Department of Homeland Security (DHS) records indicate that Hortencia GONZALEZ is the mother of Rogelio NIETO-GONZALEZ; and Ninfa C. BEATTIE is the spouse of Rogelio NIETO-GONZALEZ. No records exist to date that Hortencia GONZALEZ and/or Ninfa BEATTIE have employment in the United States that would allow for the purchase of a newly constructed residence without the aid of a loan or mortgage.

(k.) Based on the foregoing information your affiant believes that Rogelio NIETO-GONZALEZ is utilizing his residence to further the drug trafficking, money laundering, structuring, and drug currency transportation activities. Surveillance of Rogelio NIETO-GONZALEZ during the week of April 20, 2015 to April 30, 2015, has shown that Rogelio NIETO-GONZALEZ still resides at ███████████ Brownsville, Texas. On April 20, 2015, agents observed Rogelio NIETO-GONZALEZ and Ninfa BEATTIE doing yard work at the residence. Additionally DHS records indicate that Rogelio NIETO-GONZALEZ possesses a visa and regularly travels between the United States and Mexico. An irregular pattern of entry with multiple night stays between entries has been observed in the crossing records for Rogelio NIETO-GONZALEZ. As an example, during this ten day period, Rogelio NIETO-GONZALEZ crossed into Brownsville on five occasions. Agents observed multiple vehicles parked in the driveway in which Ninfa BEATTIE is the registered owner. One of the vehicles, a 2015 GMC SUV, was the vehicle that Rogelio NIETO-GONZALEZ entered Brownsville, Texas in earlier that same day. In the late evening hours, agents observed the same GMC SUV parked at the residence.

(l.) On the evening of Tuesday May 5, 2015, while conducting routine patrol duties in Matamoros, Tamaulipas, Mexico, the Government of Mexico (GoM), Tamaulipas State Police arrested Rogelio NIETO-GONZALEZ and seized $33,314.00 USD and two vehicles. The Tamaulipas State Police also seized 50 small bags of marijuana, 3 small bags of cocaine, 241,000 Mexican Pesos, nine cellular phones, 30 caliber magazines, a .380 caliber handgun with 6 magazines, and 3 money counting machines from Rogelio NIETO-GONZALEZ. All seized property was turned over to the Matamoros, Tamaulipas, Procuraduría General de la República (PGR) Office. The PGR case is an ongoing investigation.

(m.) Based on the foregoing information your affiant believes that Rogelio NIETO-GONZALEZ, Abel BRIONES-RUIZ, Donaciano GARCIA, and others are involved in a conspiracy to possess with intent to distribute cocaine. Your affiant knows from his experience that people involved in drug trafficking keep records of the trafficking activity in their place of residence. In addition, people who are trafficking in narcotics keep records of their association with other individuals involved in the trafficking of narcotics. Further, your affiant knows from his experience that people involved in money laundering and structuring deposits keep records of narcotic transactions and various schemes used to conceal their drug sale profits from discovery by authorities. Also, your affiant knows from his experience that people who build their own residences keep records of the monies spent on the construction and decorating of said residences in the form of receipts, which oftentimes indicate the manner of payment. Outlined in Attachment A are the items that your affiant believes may be found at ▮▮▮▮▮▮▮▮▮ Brownsville, Texas.

5. Based on the above mentioned facts, I submit that probable cause exists to believe that the items listed in Attachment "A" are located at and within the premises as above described.

_____
James W. Wimberley
Special Agent
Drug Enforcement Administration

Sworn to and subscribed to before me this the 20th day of May, 2015.

_____
Ignacio Torteya, III
United States Magistrate Judge
Southern District of Texas